We will hear argument first this morning in Case 14-990, Shapiro v. McManus. Mr. Kimberley. Mr. Chief Justice, and may it please the Court. Section 2284a states in plain terms that a district court of three judges shall be convened when an action is filed challenging the constitutionality of the apportionment of congressional districts. Section 2284b lays out the procedure for calling a three-judge court when the circumstances identified in 2284 are satisfied. It reads, quote, Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges. Now, although that language did not appear in the statute until the 1976 amendments, it was no more than a congressional recognition and codification of what was then by settled practice, that a complaint covered by 2284a would have initially to be referred to a single judge, that the litigants then would have to file a request for a three-judge district court, and in turn that the single judge would have to determine whether three judges were in fact required. Now, at the time that Congress enacted that longstanding practice in the 1976 amendments to the Act, this Court's precedents had made clear that one basis upon which three judges are required is when the claim is constitutionally insubstantial. Congress is presumed to have been aware of this Court's precedents, so holding, and in the absence of a contrary indication, and here there is none, to have intended that interpretation of the words not required to be incorporated into the statute. Alitoso, what if it's perfectly clear that the plaintiffs are entitled to judgment? Let's say a State legislature goes back to its pre-Reynolds v. Sims method of constituting the State legislature. Does that have to be referred to a three-judge court? If it is — if the claim is obviously foreclosed by this Court's precedents, then no, it doesn't. The upshot of this Court's insubstantiality doctrine is that when a claim is so obviously foreclosed, it doesn't present a bona fide controversy within the meaning of Article III, and therefore isn't the kind of case that has to be referred to a three-judge court. How do you square that with the statutory language? Well, we think that's embodied in the words not required. In the two and three years before Congress inserted the key language in section 2284b, this Court had said in Goosby that a three-judge district court is, quote, not required when the claim is insubstantial. Maybe Goosby was wrong. You don't think Goosby was wrong? Well, Goosby represents what had been by then nearly 50 years of practice, beginning with this Court's decision in Peresky. For what it's worth, I will say, I think if Goosby is wrong, we still end up winning because of it. Oh, I know that, yes. Well, I'm sorry. What do you — I'm sorry, why don't you go ahead. Well, I would just say I think the path of least resistance here to reversing the Fourth Circuit is not to overturn that precedent, but we certainly would be happy if the Court weren't going to do that. What do you do if your argument in a case that might go before a three-judge court is that the Court's precedents should be overruled? It's clearly foreclosed by the Court's precedents, but maybe there's a very good argument that those precedents haven't withstood the test of time or whatever. What happens then? This Court's precedents? Yes. This Court's precedents. I understand the Chief Justice. So I think in that circumstance, at least according to the Goosby rule, is that the case would properly be dismissed for lack of jurisdiction. It's not stating. By the single-judge court? By the single-judge court. And if then this Court's ---- Kennedy, I have some problems with that. Suppose the case has been on the books from this Court for 15, 20 years. There's all sorts of academic commentary. Certain circuits have questioned whether the reasoning is still valid. A single-judge court can dismiss in that case? Well, I think according to the substantiality rule, yes. Again, if the Court were inclined to ---- I'm surprised you think they do need to take that position. No, and again, I don't think we do. And if the Court were inclined to narrow the rules so that it didn't apply in that circumstance again, I think we'd still win. I don't think this case necessarily presents that question. And, you know, I think all the Court has to recognize for purposes of this case is that the insubstantiality rule is not one and the same as the 12b-6 standard. Kennedy, I take it Goosby is not parallel to Rule 11. Rule 11 is a class of cases which are more frivolous even than what Goosby would have said? No, I think Goosby is even more frivolous than Rule 11. What the Goosby standard provides is that the claim must be obviously frivolous. And what the Court said in Goosby is obviously is doing work in that formulation. It can't just be that a judge ultimately concludes that the claim is frivolous. It's got to be that there couldn't possibly be any debate about whether it is in fact foreclosed by this Court. Am I right that Goosby thought of that as part of the jurisdictional question? That's correct. In other words, it's an application of Belle v. Hood? That's correct. Which suggests that if something is so obviously frivolous, then the Court has no jurisdiction on it at all? That it's not a bona fide case in controversy within the meaning of Article III. That's exactly right. But it's a very difficult line you're drawing, and I understand Belle v. Hood. But you're saying he can't do it, he can't determine that the three-judge court is not required just because the plaintiffs are wrong. But he can make that determination if they're really wrong. In your brief and the analysis, it is always, it's like a thesaurus. It's just a collection of adjectives that all mean frivolous, insubstantial, you know, and I'm not sure it gives a great deal of guidance to a court. Well, I think I'd say two things about that. The first, I mean, that catalog of adjectives appears in Goosby. This is a rule that has been on the books since Peresky in the 1920s. It isn't, in our view, a rule that has been causing a whole lot of trouble since the 1976 amendments. But again, if the Court is dissatisfied with the rule and we're inclined to hold that it is not a basis for finding three judges not required, we still, I think it still would require a reversal of the Fourth Circuit's rule and of the district court's judgment in this case. Roberts Well, you call it, I guess my concern, you call it a rule, but it's really not much of a rule. It's just kind of a, I don't know, a sense that something is really bad, as I guess I said earlier, as opposed to just bad. And I think that's an awfully fuzzy line to draw, fuzzy in when you're talking about jurisdiction where you like to have very precise and clear rules. I agree entirely. And I guess what I would say on top of that is if the Court is concerned to avoid fuzzy and difficult rules, that certainly is a reason not to adopt Respondent's position. Kennedy Could the Respondents argue that in the light of Iqbal and Twombly, Goosby should be reconsidered and the Federal court should have some district court, single judge, should have some more authority, or does that work the other way, do you think? Roberts I think it works the other way. I would be surprised to see Respondents make that argument, because, again, we're dealing here with a statute, with statutory language that says when a complaint is filed challenging the constitutionality of congressional districts, that a three-judge court shall be convened. And then in B, using the word required, it essentially Respondent's view is that the word shall appearing in 2284a actually means may, and that the rule required appearing in 2284b actually means permitted, and that a single district judge, in their view, can elect whether or not to convene a three-judge court if he or she would, in his or her discretion, prefer to keep the case for him or herself. Ginsburg Does your argument depend on categorization of what is frivolous, the Goosby language, as being jurisdictional? Roberts I think if the Court were to continue that line of cases here and to hold that that is a basis for declining to convene a three-judge court, yes. It depends on it being a jurisdictional question. Ginsburg So what happens under the current statute that calls for a three-judge court on request of a party? Suppose nobody requests the three-judge court. Would the — could the single judge proceed with the case? Roberts Well, our view in light of this Court's precedence is no, that it isn't waivable and it's a jurisdictional statute that the judge would be without — that a single judge would be without power to consider the merits in a case covered by the statute. But I should say that that also isn't necessarily a question that's presented here, because even if it's just a claims processing rule, it's still a mandatory claims processing rule. And nothing in what the Respondents have said indicates that when a request is filed, the district judge would be empowered nevertheless to disregard the request and nevertheless keep the case for himself. Scalia You don't think — let's assume that Goosby is jurisdictional. Does that mean that we must let the single judge determine it? Roberts Well, I'd — Scalia Why is it that the single judge must determine the jurisdictional question? Why can't that be left for the three-judge court, just as everything else is? Roberts To be clear, I don't think a single judge does have to decide the jurisdictional question. I think, again, the key point is that the merits have to go to a three-judge district court. I don't think the Court has to say anything more about the statute than that in this case, because on the face of it, what the district court here did was enter judgment under Rule 12d6. Scalia Perhaps the jurisdiction has to go to that court as well. Roberts I think that's right. Scalia Perhaps. Roberts Yes. Kennedy Does the waiver argument, the argument that this can be waived by the consent of all parties, does that rest on decisions of this Court? Roberts Not so far as I'm aware. I mean, nothing in this Court's precedents indicate that this statute is jurisdictional. And, in fact, excuse me, that it's waivable. And, in fact, the Court's decision in Idyllwild and before that in Stratton say precisely the opposite. They say that it's a jurisdictional statute, and, moreover, when the conditions for convening a three-judge court are met, that a single judge loses jurisdiction over the merits of the case, either to grant or to deny relief. Idyllwild says that very clearly. Kennedy Has the waiver rule been adopted by some of the circuits? Roberts Not — in fact, no. It's been rejected by every court that's considered it, the second and D.C. circuits. Ginsburg But there was a change in 76, and that's when they put in, upon the filing of a request. And that language suggests that it isn't a jurisdictional question, because if a party has to request it, and it normally follows, if a party doesn't request it, it's waived. Well, I wouldn't disagree that that is one possible way to read the statute. I think it's inconsistent with what this Court's precedent said beforehand. And our view, again, is that really that language is best understood as Congress's codification of what was by then well-settled practice, that when any complaint is filed in a district court, it necessarily first goes to a single district judge. That single district judge then has to make a determination whether three judges are required, and that's typically done in response to a request. Kagan In reality, on the ground, what percentage of cases is there a request for a three-judge court? Oh, all of them. And this is the case. Litigants want this? Are there any litigants that say to themselves, I'd rather have a one-judge court, thanks? Not so far as I'm aware. I think in most cases — now, I think under the Respondent's reading of the statute is a one-way ratchet permitting only dismissals, but I gather not Grant's, although it's not clear where in the statute the Respondent is. Well — Ginsburg It wasn't a practice in the old days that if you didn't want the three-judge court, you simply didn't ask for injunctive relief, you filed a complaint for declaratory relief, and then you didn't — you could get your one judge. That may be so. To be clear, though, so first of all, that would just mean that the preconditions for invoking the jurisdictional nature of the statute weren't satisfied, and that certainly is something that litigants could choose not to do. Scalia I don't know why it's contrary to a jurisdictional status that it has to be requested. I mean, can't a request be one of the conditions to confer jurisdiction, just as a plaintiff is one of the conditions to satisfy Article III and thereby confer jurisdiction? That's exactly right. And our example is, for instance, filing a notice of appeal in the court of appeals. The court doesn't have jurisdiction without a request for the court to reconsider an appeal. Roberts To get back to the question Justice Kagan asked, it was certainly the case when the law was enacted that the three-judge court was viewed as an anti-plaintiff provision. The idea was that single judges were too quickly issuing injunctions, you know, blocking the State enactments, and they thought that would be less likely if you had three judges. Now, I'm not sure if that's still true today, but it certainly was when the law was passed. Jay It was true in 1910 when the first version of the statute was enacted. It was not true by 1976 when the amendments at issue here were enacted. That much is made clear by the legislative history of the Voting Rights Act, which is one of those other statutes that provides for three-judge court review beyond 2284. The legislative history in that, in that, with respect to that statute, was clear that, indeed, three-judge district courts were more likely to grant relief to plaintiffs than were single judges, which is in part what explained why Congress in that Act provided for three-judge court review. Ginsburg And plaintiffs liked it because you could skip over the court of appeals and go right to this court and on appeal rather than social rally. Jay That's right. And so I think in that respect, Respondent's reading of the statute is also quite inconsistent with the well-understood purposes of the statute. Among them, key among them, to ensure that merits judgments in cases covered by the Act, which after the 1976 amendments are quite narrow and cover only particularly politically sensitive and important cases, receive as quick a final decision before this Court as possible. On Respondent's reading of the statute, a single judge can keep the merits for him or herself and interpose the court of appeals in the process. What's more, their reading of the statute also creates really difficult jurisdictional problems on appellate review. If a single-judge district court can grant a motion to dismiss under 12b-6 and it goes before the court of appeals and the court of appeals reverses, the upshot is that, well, three judges were, in fact, required after all. The case then has to get referred to a three-judge district court. But it's not clear then whether the three-judge district court would be bound by law of the case on the 12b-6 question by the decision of the court of appeals. If it is bound, that's not clear. Scaliaro, sure it is, come on. Do you really think that's questionable? I actually don't think it's questionable. I think it's quite inconsistent with what the statute says in B-3, though, and it's an indication why Respondent's reading of the statute can't be the right one, because what it means is the 12b-6 question then goes to the court of appeals precisely in the circumstances when Congress has meant, Congress meant only the single-judge district court to decide that. Alito, how do you think the Goosby rule applies to political gerrymandering claims in general? This Court has never seen one that it thought was justiciable. Do you think there are any that, but assuming that the possibility that there might be one, is enough to take the case to the three-judge court? And if that's so, are there any that would not go to a three-judge court? I think there are some that wouldn't go. A political gerrymandering claim that was predicated exclusively on a purported right to proportional representation in Congress would be wholly foreclosed by Vandemer itself. But the fact that so long as it favors the party who, the party that controlled the legislature when the plan was drawn up, which is almost always the case, couldn't a political gerrymandering claim be made, that that's why it was done? I think that's right, and I think that's why we see most of these claims rightly being sent to three-judge district courts, just as Congress intended. We might get to this question, but at some point somebody is going to have to say whether you do have a substantial claim. That's right. And our view against the backdrop of this Court's precedence is that's a sufficiently easy question. Is it? Well, I think so. Because? There is no decision of this Court, binding decision of this Court, holding that our claim is wholly foreclosed. Veith? No, I think Veith. Because? Well, Veith has — I think the threshold question is what is the controlling opinion in Veith? There's a plurality opinion. The courts, the lower courts have all generally agreed that it's Justice Kennedy's concurrence in Veith that controls, and it's Justice Kennedy's concurrence in Veith that provides the basis for the complaint in this case. It would be quite strange to say that a claim that is embodied in the controlling opinion of this Court from less than a decade ago is wholly foreclosed by this Court's precedence. That's why we think it's a sufficiently easy question for this Court to remand with instruction simply to convene a three-judge court. But if the Court were not inclined to go that far, we're perfectly comfortable briefing that question before the single judge. If there are no further questions, I'll reserve it. Kennedy. I didn't understand. If you're not inclined to go that far, you want to brief what question before the district? Well, I think the single judge below, Judge Breyer, would have to address the question whether three judges are required under proper standards. In this case, he said three judges are not required because I dismiss under Rule 12b-6. I don't think it necessarily follows. So you'd want to brief it under Goosby or something? Yeah, that's right, under the proper insubstantiality standard. Now, as I say, I think that issue has been briefed before this Court and it's a sufficiently easy question to answer, that it's something this Court can reach. But if it's not so inclined, then we'll do so before the single judge. Thank you. Thank you, counsel. Mr. Sullivan. Mr. Chief Justice, and may it please the Court. In 1976, Congress considerably narrowed the circumstances that would call for the procedural device of a three-judge court, and as part of that, paring down of the three-judge statute, Congress for the first time authorized a single district judge to, quote, determine that three judges are not required. For three reasons, this Court should affirm that that authorization permits the single district judge to dismiss a complaint that on its face fails to satisfy Rule 8 and Rule 12b-6 as required in all civil actions. I'm sorry. May I go back to something you just said? Because I thought that the word required was in the statute. It wasn't introduced in 1976. It was there before. Required to be heard by a three-judge court. Well, but it wasn't for an authorization for a single judge. In the prior statute, upon the filing of the request for injunctive relief, the three-judge court was required to be convened. And so the express language of the statute did not have a provision for the single judge to make that call. On what basis are you – it sounds to me that you're giving a meaning to not require that was different to the meaning we gave to it pre-1976. Am I correct? I don't think that's necessarily the case. I think not required meant it didn't have a set meaning as plaintiffs. He took out the adjective of descriptors from our case law. Insubstantial, wholly insubstantial, frivolous, obviously or essentially frivolous. I mean, that's very different than a 12b-3 motion. Yes, Justice Sotomayor, those words appear. But in the prior case law before 1976, this Court had in two important cases permitted a district judge to adjudicate the entire case, notwithstanding the presence of a substantial claim raised by the plaintiff. And those cases are Bailey and the Hagins v. Levine case cited by Petitioners. There, Hagins v. Levine, there was no question there was a substantial equal protection claim. The district judge perceived that there's this preemption claim, and I think I can get rid of the case by ruling on the preemption claim, which is exactly what the district judge did, and this Court affirmed that that was the correct procedure, that there was no reason to trouble a three-judge court if there was a statutory claim that could be resolved and rendered unnecessary to address the equal protection clause. So the idea that there was this set understanding that any time there's a substantial claim, it's off-limits to a single district judge is simply not borne out by this precedent. So there is more at work in that precedent. Indeed, for those who will consult legislative history, the Senate report 94204 has a heading under uncertainties in the prior law, and the first item is A, whether or not a three-judge court should be convened, was the first of the several uncertainties that the Senate noted in its report. So the idea that Petitioners want to say that by saying not required in the statute, Congress intended to adopt a certain subset of this Court's prior jurisprudence is not borne out by this precedent. Breyer, they want to raise about as important a question as you can imagine. They want to say, reading Beath, that the State legislatures are forbidden to draw district boundaries the way that has been done here. I take it that's their basic claim. And if they're right, that would affect congressional districts and local districts and legislative districts throughout the nation. So what reason could Congress have had for saying, although we want three-judge courts to decide these kinds of cases generally, where the single most important issue that could possibly be raised, I exaggerate only slightly, is raised, that kind of issue is for a single judge? Well, Congress, if it had looked back at this Court's case law, would have seen that this Court regularly denied three-judge courts, even where there was an important issue, such as when the preemption was the issue. Preemption cases was always a narrow interpretation of the statute for very important reasons, and that is to minimize the dislocation of the lower Federal court's mandatory appellate docket. So those are always at work when the Court was reading. The statute in Congress knew this, and on page 5 of the Senate report acknowledges this narrow reading without disavowing it or instructing this Court to do otherwise. So the statute always was read, not in the most embracing terms, as they said in Swift and Company v. Wickham at page 126, not in the most embracing terms, but in restrictive way because of the important concerns of judicial administration that were at stake, but also to best serve the historical purpose, which is to protect States from the improvident injunction by a single judge.  Ginsburg. Ginsburg. Ginsburg. We have to be strayed from that, what Congress has, because Congress said you also get a three-judge court if you're attacking a Federal statute, right? It started out with the concern about enjoining State statutes, but if you're trying to enjoin a Federal statute, you would also get a three-judge court, right? And there was no State protective interest involved in that? That was probably to protect an analogous Federal interest in having its laws not improvidently enjoined. That statute is no longer there, as you know. But that obviously wouldn't have had the same State sovereignty concerns, but there was impetus for that adoption from the Federal Government because they saw the benefits that the States reaped from having the procedure adopted. Kagan. Kagan. Can I make sure I understand what you're saying? Because what you're saying now is different from what I had thought that your briefs were saying. I had thought in your briefs that you were relying on changes in the law that Congress made in, I think it's 1976, is that right? Yes. But now you're suggesting that you're not relying on that, that you're saying that before that, we viewed as acceptable a one-judge court dismissing a case. Is that now what you're saying, that the historic practice favors you as opposed to that the 1976 amendments favor you? I think the important thing is the amendments that we pointed out in our brief were significant changes in the structure and meaning of the statute. But I was responding to Petitioner's argument that this Court can simply look at the words not required and know immediately what they mean from reading the prior case law, and I don't think that will be an effective process for this Court if it gives full time perspective. It's a winner for you. It's a winner for you if those prior cases say what you say they say. I hope so, Your Honor, and I hope you remember that. Well, it should have been in your brief. I mean, you should have made that point in your brief. Well, you know, I'm trying to provide value now in addition to what we had in the brief. For my edification, what are the cases you're relying on? Well, in Swift v. Wickham is the best exposition of what this narrow construction or restrictive construction is about. The words clearly said in the prior statute, on grounds of unconstitutionality, and this Court read that phrase not to include a very important clause of the Constitution, the supremacy clause, because it was important to keep it narrow and not to open the floodgates to every preemption challenge that would come down, even though those challenges are very important and often much more devastating to the State than a constitutional claim could be. That's an example. In Gonzales, this Court read the phrase in 28 U.S. 1253, which is the direct appeal provision, orders granting or denying an injunction, this Court read to not include any denial of an injunction that would have been a sound basis for not convening a three-judge court in the first place. And the Court phrased it that broadly, to include whatever basis there might be to not convene a three-judge court. That means you don't get the direct appeal, which is a very important part of this whole statutory scheme. It became more important with the rise of the reapportionment cases, which, by the way, the reason you don't see any old reapportionment cases in the case law is they would have been foreclosed by this Court's precedent until Baker v. Carr. But with the rise of those, the part of the structure, not the three-judge so much, but it was the direct appeal that became more important to the States to protect them, as was spoken to by the Assistant U.S. Attorney General Robert Dixon, who testified, and we quote his testimony at page 30, talking about, but for that direct appeal and the ability to get an immediate stay from this Court, entire elections would have had to be conducted under plans that were adopted by district courts, contrary to what the legislature had provided, and it was very important to have access to this Court to get that stay and not to have the entire election disrupted by that order. The idea that Petitioner insists on that the insubstantiality rule is not a merits-based test is just obviously can't be true, because you've got to know what the merits are before you know it's insubstantial. I know this Court's precedent has treated it as a jurisdictional matter, but I would submit that it really doesn't meet the set of tests that Justice Ginsburg laid out for the Court in our bill of what's jurisdictional and what is not. And the idea that there's a clear division between insubstantiality and failure to state a claim is not borne out. And in one of the cases cited by Petitioner in their brief at page 23, Colson v. Patterson, a 2008 Second Circuit case, illustrates that, because there a single district judge is deemed able to decide it because it's insubstantial, even though the Court acknowledges that the theory is not foreclosed by precedent, it just comes around to saying, yes, it is insubstantial, and it rules, it affirms the grant of a motion on the pleadings under Rule 12c, which in the Second Circuit, as in most other circuits, is analyzed exactly like a Rule 12b-6 failure to state a claim motion. The claim there was that the State should have used voting age population, which, interesting enough, is the issue that this Court has noted probable jurisdiction on in Evanwell, and there a three-judge court in Evanwell dismissed under 12b-6. So you have a court in the Second Circuit saying that's insubstantial. Whether or not they were right or they analyzed it right under Goosby, they reached that conclusion, and they did it on an analysis that it's hard for me to distinguish from a 12b-6 analysis. And then the three-judge court in Evanwell, which this Court will be visiting, did the whole matter under a 12b-6 analysis, which is maybe a little bit more detailed than the Second Circuit insubstantiality analysis, but really hard to tell the difference of how did you reach that conclusion. Kagan, I guess I'm not so inclined to think that. We always have had this very narrow category of cases which we say we're dismissing on jurisdictional grounds that sound kind of meritsy, but we've cabined that. You know, we've basically said that's only when it's completely ridiculous, and so there's no case at all. It's just a laughingstock of a case, given our precedence. And that's a very different kind of inquiry than the typical 12b-6 inquiry. Well, it's easy when it's the little green men and the extraterrestrials, but that's not the cases that have arisen and been addressed by this Court. Goosby v. Osser, the court of appeals in that case, ruled that it was insubstantial, the claim there that prisoners had to have access to absentee ballots, because this Court had a prior case, McDonald, which had said the prison system there, or in McDonald, the prisoners to have absentee ballots. And when it came to this Court, Justice Brennan for the Court said, you've misread our precedent. McDonald doesn't foreclose this case. So it involved no extraterrestrials and no little green men, but a panel and a panel of appeals. Scalia. I don't know what you mean by extraterrestrial. What are these? Some of the case law refers to aliens. Some of the case law seems to categorize the only cases that would come under Bell v. Hood, some judges will say, are the ones that are so outlandish that involve something that on its face you could say that could never be true. And that's what you mean by extraterrestrial? Yes. Outlandish, okay. Outlandish. Breyer. Bailey doesn't. I mean, Bailey was the mirror image case. I mean, it was a case where some African-American plaintiffs were saying they have a constitutional right to travel without discrimination in interstate commerce, as I read it, and they had convened a three-judge court because they wanted to set aside Mississippi law to the contrary in 1961. And the court said, but it's absolutely clear that a statute that requires segregation is unconstitutional. So this shouldn't have even been heard by a three-judge court because there has to be some kind of an issue. And the words it uses are, it doesn't require a three-judge court when the claim that a statute is unconstitutional is wholly insubstantial. But there they're speaking non-existent. And they said it's non-existent because it's clear what the Federal law was. I mean, that was the nature. So I don't see how that helps you. Well, I don't know if it helps, but I think it doesn't help Petitioners the idea that that's a significant expansion, if not a complete departure from Velvey Hood, which addressed when a complaint could be dismissed for lack of subject matter jurisdiction because it's insubstantial. There, the claim is granted. Relief is granted in. Breyer. That's true, but I mean, they put down a standard as to whether or not a three-judge court is necessary. And they say a three-judge court is not necessary when the reason for gripping the three-judge court, you know, if it's insubstantial in that case, you have to have a three-judge court, I guess, when there was some constitutional issue. They said there is no constitutional issue, not because it was frivolous or from Mars, but for the opposite reason. The law was clear. The law was clear, and a single district judge should have been allowed to address that and augment it. Breyer. So here, I guess you're going to think, certainly, he's not clearly right, and the question is, is he clearly wrong? But I would submit that under this Court's prevailing rule, the Court adopts the Federal rules, and all district judges are bound for them. If a district judge is entitled to grant relief, as under the Bailey case, it seems reasonable to allow that judge to determine that a complaint on its face is legally sufficient, as the Court would in any other case. These rules are binding. Unless you can find in the statute a reason that compels the district judge not to comply with the civil rules of civil procedure, then the district judge is in his or her rights. So you say required in the statute means States a claim. Well, I think that it could — it incorporates that understanding as much as it would incorporate the insubstantiality, because both are presumptions that courts rely on. A case is not going to proceed, pass the motion to dismiss, certainly not under Iqbal and Twombly, unless it satisfies Rule 8. That's just a basic understanding of every district court in the land. And it seems strange that if the cases are that important and they are going to require two extra judges and a direct appeal to this Court, that a legally insufficient complaint that otherwise could not get past the threshold of the courthouse is going to get an automatic direct appeal to this Court. So let's assume you have a district judge who says it fails to State a claim. And what does the plaintiff do? Where does the appeal go? To the court of appeals, as in every other case. So it goes all the way up, and if he loses in the court of appeals, he tries to come up here, right? And we finally decide it did State a claim. Then what happens? It goes back down and you begin all over again with a three-judge court, right? Yes, Your Honor. Wow. Wow, that's, I mean, that's my comment. It's extraterrestrial, as he said. Well, but I understand your reaction, but I think that comes when you have a departure from the norm, as the three-judge statute creates, you're going to have some situations that may be a little bit stickier than otherwise that you have in the normal functioning of the country. But that's it. I mean, the other alternative is it's a three-judge district court and then we have to take it on the merits. I mean, that's a serious problem, because there are a lot of cases that come up in three-judge district courts that would be the kind of case, I speak for myself anyway, that we might deny cert in to let the issue percolate. And now with the three-judge district court, no, we have to decide it on the merits. Well, you'd have seven more direct appeals from Maryland, as we cite in our brief, the cases we've had in recent years that were dismissed by a single judge. They would have all come here, and we're one State, times 50, 400 more direct appeals, perhaps. I don't know how frequently these cases are filed in other States. But that was a concern that was always lurking in all the cases prior that this Court decided before 1976 and was acknowledged in the Senate report, that there is this concern to control this Court's mandatory docket, which Congress cares deeply about, because they took away the direct appeal of constitutional claims that would come up from the Court's mandate. Scalia, we care even more than Congress, trust me. I hope you care deeply, and deeply enough to affirm this reasonable interpretation. And I think it will serve the interests of this Court and also all the other litigants as well. And unless there are further questions, you submit. Roberts. Thank you, counsel. Mr. Kimberley, you have 11 minutes left. Kimberley, just a few quick points. First, a comment about Swift v. Wickham. This is a case that we addressed on page 5 in footnote 1 in our reply brief. The holding in that case was simply that a preemption claim is not a constitutional claim within the meaning of the statute. There is nothing inconsistent about that holding with our position before this Court. Second, with respect to the Court's question. Scalia, explain why that's so. Why is that so clear that it's frivolous? Well, that's not the holding in the case. I'm sorry. I just the – in order to have a three-judge court, you have to bring a constitutional claim. And the Court's holding in that case was that a preemption claim, although it involves a question under the Supremacy Clause, is ultimately really a statutory claim. And so it just isn't of the sort that Congress meant to go before a three-judge court as a matter of interpretation of the statute. And it doesn't matter whether that's frivolous or not. That's right. Yeah. It's a completely different holding. It has nothing whatever to do with the question whether a substantial claim has to go before the three-judge court. Does it happen often that a single judge will say there are three issues here, one would definitely involve a three-judge court, but the previous are ones that I can reach and so I will reach those first? Does that happen very often? Not so far as we're aware. We are aware that it has happened. It doesn't seem to be a frequent occurrence. The Third Circuit in Page indicated that when that happens, because the statute applies to the action, that the entire action must go. Now, if I could say something briefly about purpose, my friend on the other side of the podium suggested that the sole purpose here for the statute was to protect States from improvident grants of injunctions. If that were the case, you would expect in Section 2253 to see, which is the provision that provides for appellate review over judgments of three-judge district courts, you'd expect to see mandatory and direct review before this Court only from final judgments of courts granting injunctions. But in fact, what 2253 says in express terms is that there is a right of immediate appeal before this Court from both grants and denials of relief in cases heard by the three-judge court. Scalia. To say otherwise, we would have to say that you get no appeal in one category of case. I'm not sure it would comply with due process to have a judgment from which there is no appeal. And that's what you're saying, that Congress would have provided for no appeal, whatever, if you – if the State wins. No appeal for the plaintiffs. Well, I think the Respondent's position is, if relief can be denied, it may be granted that an order of that sort may be entered by a single district judge, and you'd get 1291 review before a court of appeals. Our point is only that if the statutory purpose were only to protect States from grants of injunctions, you would see, and that single judges in turn could decide everything else, you would not see in 1253, which provides for immediate appeal to this Court from judgments of three-judge district courts, the right of appeal from a denial of relief. Breyer. As far as I understand it, his strongest argument on the other side would roughly go, he didn't put it this way, like this. On your side is the fact, well, why wouldn't a three-judge court decide a very important question of law in this area? On the other side of it is that, well, you just have left in three-judge courts primarily, almost exclusively, reapportionment issues, which are specially political. And to put these all, you know, they are very, because of the opinions you point out in Vieth, there is a huge variation of all kinds of different legal claims that might be made. And if there is a set of cases where this Court should be careful as to when and how and which it enters in which order, i.e. discretion, if we accept your view, that set of cases where we should be particularly careful as to how we proceed, will be the set of cases where we have no choice and we have to take immediately whatever variations on the theme of disproportionate, the gerrymandering, da, da, da, whatever order they happen to arise, and whenever they happen to arise, because we have no choice. So I have two responses to that. The first is, it's reflected in the congressional record in the testimony before Congress that, indeed, Congress was quite concerned with the political sensitivity of these cases. The way that Congress decided to deal with that political sensitivity was to ensure that, in the first instance, these cases are decided by a panel of three judges. As Judge Henry Friendly, in his testimony before the 92nd Congress, indicated, the concern was to ensure that adherents of more than one political party were deciding these cases, because not only to ensure greater deliberation and accuracy in decision making, but also because it might be unseemly to allow a single judge to decide such a politically sensitive case where it might appear, whether or not it actually is true, where it might appear to the public that his or her own political ideologies and predilections. So now you have cases quite often, particularly in the most sensitive ones, decided by a vote of two to one. So I don't know how that particular answer is very responsive to the concern that Justice Breyer has pointed out, which is one I share. Well, so that leads me to the second half of my response, and that is that in the majority of these cases that make it before this Court on mandatory review, the Court generally enters a summary affirmance and doesn't know probable jurisdiction and take full briefing. When the Court affirms on the basis of the basis, affirms on the basis, without taking full argument in briefing, there is a limited precedential effect to those decisions. It is not binding the same way that a full decision, that they are binding in the same way as a decision following full briefing. Roberts, just to follow up, in recent years, is it true that in reapportionment cases, the majority of the way we have handled direct appeals has been summarily? Saharsky, with all due respect, I think you would probably be in a better position to answer that. Roberts, no, no, I'm just talking statistically. Saharsky, I mean, certainly the Court has been taking a large number of these cases recently. It's been two or three each term. Roberts, but when you say taking them, I mean they are being presented. We have no choice but to take them. Saharsky, right, and I'm sorry, what I mean is noting probable jurisdiction and taking full briefing and argument. In two or three such cases each term. But that, at least as I understand how the Court operates, is a question of discretion, whether it notes probable jurisdiction and takes that additional step. Alito, on the issue of political sensitivity, if it goes to a single judge, you will have a decision by a judge who has presumably been selected by the spin of the wheel or by at random, and then you will have an appeal to a court of appeals panel that is presumably chosen at random, whereas if it goes to a three-judge court, there will be a decision, and it may involve some very sensitive findings of fact, by a panel that is hand-picked by the chief judge, who is in a position to appoint himself or herself to the three-judge court and select a third district judge who the chief  judge. So I don't see how that removes, how that creates an insulation against the appearance of political favoritism. Saharsky, it may be so that in those cases, if a litigant or a member of the public dug down behind how the panel is appointed, that there might be a basis for raising a concern. But it certainly reflected in the congressional record that it was Congress's concern, and indeed, this goes back to the original version of the Act, back in 1910, that Congress's concern was that the public could rest more easy when decisions of such political importance and sensitivity are decided by three judges rather than one. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.